UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| PROXENSE, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>APPLE INC.,<br><br>    Defendant. | Civil Action No.  6:24-cv-00143-ADA |

**PLAINTIFF'S OPPOSITION TO DEFENDANT APPLE INC.'S
MOTION TO TRANSFER TO THE NORTHERN DISTRICT OF CALIFORNIA**

**TABLE OF CONTENTS**

I. INTRODUCTION ..................................................................................................................1
II. LEGAL STANDARD ............................................................................................................2
III. ARGUMENT..........................................................................................................................3
   A. THE PRIVATE INTEREST FACTORS ........................................................................................3
      1. The Convenience for Willing Witnesses Disfavors Transfer ......................3
      2. The Relative Ease of Access to Sources of Proof Disfavors Transfer. .......9
      3. The Availability of Compulsory Process Disfavors Transfer ...................11
      4. Trial will be Easier, More Expeditious, and Less Expensive in this Forum Given the Court's Prior Rulings on the Asserted Patents ..............12
   B. THE PUBLIC INTEREST FACTORS .......................................................................................14
      1. The Western District of Texas has a Strong Local Interest in this Dispute.........................................................................................................14
      2. The Administrative Difficulties from Court Congestion Disfavor Transfer.......................................................................................................15
      3. The Remaining Public Interest Factors Do Not Favor Transfer................15
IV. CONCLUSION ....................................................................................................................15

## TABLE OF AUTHORITIES

Page(s)

Cases

*Acqis, LLC v. Sony Interactive Entm't Inc.*,
  No. 6-22-cv-00386-ADA, (W.D. Tex. Aug. 14, 2023) .............................................................. 13

*Align Techs. Corp. v. Atlassian US, Inc.*,
  2023 WL 1861220 (W.D. Tex. Feb. 9, 2023) .......................................................................... 15

*Corrino Holdings LLC v. Expedia, Inc.*,
  2022 WL 1094621 (W.D. Tex. Apr. 12, 2022) .......................................................................... 8

*Ecofactor, Inc. v. Resideo Techs., Inc.*,
  2022 WL 13973997 (W.D. Tex. Oct. 21, 2022) ....................................................................... 14

*Fintiv, Inc. v. Apple Inc.*,
  2019 WL 4743678 (W.D. Tex. Sept. 13, 2019) ................................................................ 11, 13

*In re EMC Corp.*,
  501 F. App'x 973 (Fed. Cir. 2013) .......................................................................................... 13

*In re Google LLC*,
  2024 WL 1460003 (Fed. Cir. Apr. 4, 2024) .............................................................................. 1

*In re Planned Parenthood*,
  52 F.4th 625 (5th Cir. 2022) ......................................................................................... 9, 11, 15

*In re Radmax*,
  720 F.3d 285 (5th Cir. 2013) .................................................................................................... 9

*In re Volkswagen of Am., Inc.*,
  545 F.3d 304 (5th Cir. 2008) .................................................................................................... 2

*ParkerVision, Inc. v. Intel Corp.*,
  2021 WL 401989 ..................................................................................................................... 15

*Rafqa Star, LLC v. Google LLC*,
  2023 WL 6050593 (W.D. Tex. Sept. 15, 2023) .................................................................. 5, 10

*Realtime Adaptive Streaming LLC v. Amazon.com, Inc.*,
  2018 WL 4444097 (E.D. Tex. Sept. 5, 2018) ............................................................................ 9

*Realtime Data, LLC v. Morgan Stanley*,
  2010 WL 4274576 (E.D. Tex. Oct. 28, 2010) ......................................................................... 14

*U.S. Ethernet Innovations, LLC v. Acer, Inc.*,
  2010 WL 2771842,n.8 (E.D. Tex. July 13, 2010) ................................................................... 13

**I.      INTRODUCTION**

This case is the *fourth time* this Court will address the technology encompassed by the Asserted Patents. It will also be the fourth time this Court will construe the same claim terms, and evaluate the same asserted prior art. As the Federal Circuit held when affirming this Court's denial of Google's similar transfer motion in the still-pending *Proxense v. Google* action,[1] "[j]udicial economy can serve important ends in a transfer analysis," and this Court "reasonably found that judicial economy considerations disfavor transfer in light of [its] familiarity with the patents and technology from its **substantial involvement with prior litigation**." *In re Google LLC*, No. 2024-117, 2024 WL 1460003 (Fed. Cir. Apr. 4, 2024) (emphasis added). That determination resulted in denials of similar transfer motions in *Proxense v. Google* **and** the related *Proxense v. Microsoft*[2] action. It should also lead to denial in this related case.

In fact, judicial economy considerations disfavoring transfer have only strengthened since this Court denied transfer in *Google* and *Microsoft*. The Court has issued two more *Markman* orders, construing terms Apple has again now put into dispute (e.g., "access message"). Summary judgment motions in *Google* are due November 1—just two weeks away, and both *Google* and *Microsoft* will be tried before this case. Moreover, the same judicial economy considerations from *Proxense v. Samsung*[3]—which settled on the day of jury selection, and in which the Court issued orders on *Markman*, summary judgment, *Daubert*, and motions *in limine*—are all still present.

Aside from judicial economy considerations, there are many more reasons that disfavor transfer. Apple's ties to this district are substantial, with multiple witnesses with *unique knowledge*

---

[1] *Proxense, LLC v. Google LLC*, No. 23-cv-00320-ADA (W.D. Tex.).

[2] *Proxense, LLC v. Microsoft Corp.*, No. 23-cv-00319-ADA (W.D. Tex.).

[3] *Proxense, LLC v. Samsung Elecs. Co. Ltd.*, No. 21-cv-00210-ADA (W.D. Tex.).

living in and around Austin. The accused technology involves: (1) the Apple Pay and Wallet apps' ability to biometrically authenticate payment transactions; and (2) Apple passkeys—the ability for users to passwordlessly sign onto Apple products or services. Both infringing functionalities rely on Apple's Secure Enclave, which is used to persistently store the biometric data that is used to authenticate users for payment transactions and passkeys log-ins. *See* Compl. at ¶¶ 68-72; 97-98; 108; 124; 126; 140; 142; 156; 180-81. Apple's Motion already concedes that several key employees knowledgeable about the development and business of the technologies live near Austin. And discovery has further confirmed how none of the employees Apple identified in California possesses any *unique knowledge* about the accused functionalities. Indeed, Apple has previously filed—and this Court has granted—*intra-district* motions to transfer cases involving Apple Pay and the Secure Enclave to Austin. Apple stated in those cases that Austin is the home to "engineers who are responsible for defining the security architecture specifications for Secure Enclave" and "responsible for the design specifications for Secure Enclave." *Identity Security LLC v. Apple Inc.*, No. 22-cv-0058-ADA, Dkt. 27 at 2 (Sept. 10, 2021). Those facts are just as important, here. When evaluated with other potential trial witnesses (including a named inventor who lives in Chattanooga, Tennessee), *and* Apple's extensive business ties to this district, transfer to California is clearly unwarranted.

II.   LEGAL STANDARD

The legal standards governing motions to transfer are familiar. They need not be repeated in full beyond that they "place[] a significant burden on the movant to show good cause for the transfer." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314 n.10 (5th Cir. 2008) (en banc). A motion should be granted only if the transferee venue is "clearly more convenient." *Id*. at 315.

2

### III.     ARGUMENT

Venue is proper in WDTX because "Apple employs thousands of employees in Apple's Austin facility who work on . . . aspects of **Apple Pay, Apple Wallet**, and Apple Cash." *RFCyber Corp. v. Apple Inc.*, No. 6:21-cv-00916-ADA, Dkt. 149 at 14 (June 6, 2023) (emphasis added). Since this case could also have been brought in the NDCA, the transfer analysis hinges on the public and private interest factors. Apple's opening brief *concedes* that only four of eight factors supposedly favor transfer: (1) the relative ease of access to sources of proof; (2) the convenience of willing witnesses; (3) the availability of compulsory process for third-party witnesses; and (4) the NDCA's local interest in deciding this dispute. Apple Mtn. at 15. Discovery has revealed that *none* of the public/private factors favors transfer.

### A.     The Private Interest Factors
#### 1.     <u>The Convenience for Willing Witnesses Disfavors Transfer</u>

**Party Witnesses**. This factor's focus is not on the quantity of Apple employees who reside in the NDCA, but whether they possess information witnesses in WDTX do not possess. *Proxense v. Microsoft*, Dkt. 61 at 6 (holding that precise explanations of in-district witnesses with "overlapping knowledge" blunts vague assertions of the existence of out-of-district witnesses). Apple has filed declarations from eighteen employees with potentially relevant knowledge. *Six* already reside in Austin, with two in the Czech Republic. But Apple's "vague declarations" from its NDCA employees merely "point[] to teams and employees in [NDCA] while asking the Court to accept these witnesses without scrutiny," which does not mean this factor favors transfer. *Id*. at 5. Discovery has revealed that Apple's "vague declarations" were likely drafted intentionally to downplay the importance of Apple employees who reside in WDTX, all of who have at least overlapping knowledge with witnesses residing elsewhere.

<u>Secure Enclave and Touch ID/Face ID Witnesses</u>

3

This case involves Apple's Secure Enclave. *See* Compl. at ¶¶ 68-72; 97-98; 108; 124; 126; 140; 142; 156; 180-81.  While Apple claims ▇▇▇▇▇▇ is the most knowledgeable party witness on this, below are four Apple employees (one retired) in WDTX who are all *more knowledgeable* on the Secure Enclave and who each have *unique* knowledge about relevant matters.

- ▇▇▇▇▇▇▇▇ Retired Apple design engineer who was ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. Ex. 1 at 12:10-12, 13:17 – 14:16. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *See Carbyne Biometrics, LLC v. Apple Inc.*, No. 23-cv-00324-ADA, Dkt. 84 (W.D. Tex. Feb. 12, 2024) (denying motion to transfer to California).  Lives in Leander, TX. Ex. 1 at 10:7-9; Ex. 2 at 20:17 – 22:1.

- ▇▇▇▇▇▇▇▇ Associate Design and Integration Engineer at Apple ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Ex. 2 at 10:24 – 11:5, 16:16 – 17:5; Ex. 3 at 13:10 – 14:17. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Ex. 2 at 18:12 – 20:4; Ex. 3 at 16:1-25.  Lives and works in Austin, TX.  Ex. 2 at 7:19 – 8:9.

- ▇▇▇▇▇▇▇▇ Security Architect for Secure Enclave, whose responsibilities include ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Ex. 4 at 14:19 – 17:21; Ex. 5 at 10:9 – 11:6, 13:21 – 14:4.  Lives and works in Austin, TX.  Ex. 4 at 9:19 – 10:10.

- ▇▇▇▇▇▇▇▇ Security Architect on Secure Enclave whose work includes ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Ex. 6 at 10:2 – 14:4; Ex. 7 at 14:13 – 15:13. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. Ex. 6 at 15:5-20, 16:5 – 17:2. Lives in Volente, TX and works in Austin. Ex. 6 at 5:23 – 6:7.

Each of these witnesses' testimonies illustrate that they possess unique and extensive knowledge on Apple's Secure Enclave, while ▇▇▇▇▇▇ declaration fails to identify any unique knowledge that they do not have. Their testimonies, as well as Apple's own prior motions, confirm that ▇▇▇▇▇▇ is not the most knowledgeable witness on Secure Enclave. In Apple's intra-district transfer motion in a prior case, it identified ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ as relevant

4

Secure Enclave witnesses, but *not* ▮▮▮▮. *See Identity Security LLC v. Apple, Inc.*, No. 6:21-CV-00460-ADA, Dkt. 53 at 7 (W.D. Tex. Jan. 20, 2022). Further, ▮▮▮ testified that he and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, including during the time when Apple Pay launched. Ex. 2 at 22:8 – 23:12; Ex. 3 at 26:1-9. Worse, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See* Ex. 7 at 29:5-9. Not only do Apple's own Secure Enclave employees cast doubt on ▮▮▮▮ declaration and Apple's reliance on him as a Secure Enclave witness[4], it more importantly confirms **there are** knowledgeable witnesses in this district who can testify about the accused technologies. *See Rafqa Star, LLC v. Google LLC,* No. 6-22-CV-01207-ADA, 2023 WL 6050593, at *1 (W.D. Tex. Sept. 15, 2023) (declining to rely on "vague assertions" in declarations that contain "discrepancies").

Another aspect of this case involves the Touch ID and Face ID, and Apple has identified two employees in Prague, Czech Republic who it claims are knowledgeable about these functionalities—▮▮▮▮▮▮▮▮▮▮▮▮▮▮. While ▮▮▮▮▮▮▮▮ declarations do not indicate why either of them possess unique knowledge witnesses in this district may not possess,[5] were the Court to consider their potential testimony as relevant, it would need to find that their residence in Prague *disfavors transfer*. This Court previously found that it is "undisputably . . . more convenient" for a witness to fly from Prague to Austin than to fly from Prague to San Francisco (which is further). *Carbyne*, No. 23-cv-00324-ADA, Dkt. 84 at 12.

---

[4] The Court previously admonished Apple for its lack of candor with respect to venue discovery responses. *See XR Comm'cns v. Apple Inc.*, No. 21-cv-00620-ADA, Dkt. 72-1 (Sept. 9, 2022) (noting Apple's repeated use of unreliable declarations in venue discovery).

[5] For example, ▮▮▮▮ declaration states ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

5

*Marketing and External Partner Witnesses*

Another aspect of this case will be Apple's marketing and partnership efforts with token-service providers ("TSPs") like Visa and AmEx, and other business partners who help facilitate and increase usage of Apple's Tap-to-Pay functionality. *See* Compl. at ¶ 65 ("When an Apple device equipped with Apple Pay is presented to make a contactless payment transaction, the user infringes the Patents-in-Suit."). Proxense's Complaint identified the following four employees in Austin, all of whom work on efforts related to these endeavors:

- **Jennifer Cervantes**: ███████████████████████████████████ Apple Mtn. at Ex. 35.

- **Geoffrey Johnson**: ███████████████████████████████████ *Id*. at Ex. 38.

- **Alex Coulter**: ███████████████████████████████████ *Id*. Ex. 36; Ex. 8 at 5:24 – 6:19. ███████████████████████████████████ Ex. 8 at 10:1 – 12:6, 14:12 – 16:12.

- **Alex Antunovic**: ███████████████████████████████████ Apple Mtn., Ex. 37.

Discovery revealed that Apple's connections to WDTX are expansive, and that the teams responsible for Apple Pay's partnerships are located **almost exclusively** in Austin. For example, Ms. Cervantes testified she ███████████████████████████████████" Ex, 9 at 7:10-13 (emphasis added). *None* of her team members are in California, and all but one are in Austin. Apple Mtn., Ex. 35. Similarly, ████████ works on a team that "███████████████████████████████████" specifically for the accused Tap-to-Pay functionality. Ex. 10 at 18:17-25; 21:4-14.

Most of his team is in Austin (including his boss), with just one employee in Cupertino. Apple Mtn., Ex. 38. ███████ primary responsibilities include "███████████████████████████████████████████████████" which will be relevant for financial aspects of this case and a reasonable royalty calculation. Ex. 8 at 6:15-19. Like ███████, *none* of his team sits in California, and all but one are Austin-based. Apple Mtn., Ex. 36.

Apple tries to downplay these individuals and their teams; but the financial, partnership, and usage aspects of the accused functionality are all relevant to damages, and it appears most, *if not all*, of the teams responsible for these efforts for the accused Tap-to-Pay functionality are in Austin. Apple's motion makes the conclusory assertion that these individuals (and their teams) are not relevant; but has not identified any witnesses with knowledge *unique* from these individuals located in California. That Apple claims it has identified potentially relevant individuals who work in NDCA does not mean this factor favors transfer. Like ███████ vague declaration, they, too, have submitted declarations that fail to provide any helpful information in determining whether they have unique knowledge. For example, Apple has submitted a declaration from ███████ who says he is knowledgeable about marketing across various Apple product lines, including Apple Pay. But his broad declaration never mentions Apple's outreach related to the accused *tap-to-pay functionality*, which—as ███████████████████████████ testimony revealed—███ ███████████████████████████████████████████████████. Notably, Apple admitted in a discovery response in a prior case that ███████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████ *See* Ex. 17 This casts further doubt on Apple's vague NDCA declarations. Similarly, that Apple has filed declarations from engineers on various teams who claim to have knowledge related to certain aspects of Apple Pay does not mean that

7

there are not witnesses in Austin who do not possess similar knowledge.[6] Indeed, the key Secure Enclave engineers who actually designed, wrote, and developed the key infringing aspects of the technology are *all* based in Austin.[7]

Finally, that Proxense's CEO and CFO residence in Oregon does not strongly favor transfer given that Proxense's CEO is able and willing to testify at trial in Texas. Ex. 14 (Giobbi Decl.)

**Potential Non-Party Witnesses.** Apple's motion discusses only current Apple employees as having potentially relevant information. It conveniently overlooks that the two most important non-party potential witnesses would find this District *significantly* more convenient: (1) David Brown, the named inventor of the 042 and 188 Patents;[8] and (2) ███████████, the retired Apple employee who was the lead engineer for the Secure Enclave (and who this Court found as a relevant witness in another Secure Enclave case when he was still employed with Apple in 2021).

Mr. Brown lives in Chattanooga, TN, which is significantly closer to Waco (by 1,694 miles) than San Francisco. Ex. 13 (Brown LinkedIn); Mr. Brown prefers to travel to Texas for trial. Ex. 11 (Brown Decl.). To further confirm Mr. Brown's relevance to the Accused Patents, he was recently deposed in the *Proxense v. Google* matter. And as discussed earlier, ███████ was

---

[6] Each of the declarations of ███████████████████████████████████████████████ note at least one team member who lives and works in Austin, and who presumably has access to the teams' relevant documents electronically. Indeed, ███████████████ live in Austin themselves. The other declarations from Apple's witnesses appear to be intentionally vague as to whether there exist relevant employees in Texas. *See, e.g.*, ███████ Decl. ¶ 4 (noting 33 team members, providing the location of 27 of them who are outside of Texas, but then stating that "[n]o one based in Texas reports to me").

[7] Any inconvenience for Apple's out-of-district witnesses who may need to travel to this District is greatly mitigated by Microsoft's significant presence in Austin. *Cf Corrino Holdings LLC v. Expedia, Inc.*, No. 6:20-CV-309-ADA, 2022 WL 1094621, at *3 (W.D. Tex. Apr. 12, 2022) (finding that inconvenience to out-of-state party witnesses would be reduced because their employer has offices in the transferee forum).

[8] Proxense intends to file an unopposed motion to amend its Complaint to replace the 188 Patent with the 289 Patent.

8

one of only *two* engineers on the Secure Enclave team in the early years when the infringing technology was developed, and thus possesses "unique knowledge" that "current [Apple] employees *may not* possess." *Realtime Adaptive Streaming LLC v. Amazon.com, Inc.*, 2018 WL 4444097, at *4 (E.D. Tex. Sept. 5, 2018). ▮▮▮▮▮ lives in Leander, Texas.

Ultimately, Apple has identified 10 employees in the NDCA, but has not shown that any of them possesses unique knowledge that no employee in this District does not also possess. Five of these witnesses (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮) specifically declared that they work with team members in Austin. In contrast, Proxense has identified at least 6 employees (plus 1 former employee) in this District with *specifically relevant knowledge* (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮), many of whom work on teams focused specifically on the accused Tap-to-Pay functionality and *that have no members working in California*. Additionally, there are at least 2 employees in Prague (▮▮▮▮▮▮) whose travel to Austin would be more convenient than travel to San Francisco. This factor clearly disfavors transfer. *See Carbyne*, No. 23-cv-00324-ADA, Dkt. 84 at 13.

    2.    <u>The Relative Ease of Access to Sources of Proof Disfavors Transfer.</u>

This factor considers the "*relative* ease of access, not *absolute* ease of access" of sources of proof. *In re Radmax*, 720 F.3d 285, 288 (5th Cir. 2013). It weighs against transfer if "the vast majority of the evidence [is] electronic, and therefore equally accessible in either forum." *In re Planned Parenthood*, 52 F.4th 625, 630 (5th Cir. 2022). That is the case, here, where every Apple witness testified ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Ex. 2 at 12:9-21, 17:6-8; Ex. 4 at 12:2–14:3; Ex. 6 at 8:14–9:23; Ex. 9 at 8:25-9:6; Ex. 10 at 10:6-11:13.

9

Apple claims there exist ▮▮▮▮▮▮▮▮▮▮▮▮ related to Apple Pay located in the NDCA. Apple Mtn. at 10. But it is unclear to Proxense what possible ▮▮▮▮▮▮▮▮ of the Apple Pay *application* there could be in NDCA or why they would be relevant. Apple's supporting declarations are vague and provide no clarity.⁹ As this Court knows from experience, the only source of proof that may require physical inspection is source code, and Apple noticeably never argues that source code cannot be made available in Texas or anywhere else. Indeed, Apple's own witnesses confirmed ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Ex. 2 at 12:9-21, 17:6-8; Ex. 4 at 12:2–14:3; Ex. 6 at 8:14–9:23.

Apple also claims there are ▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮ as well as "marketing employees" knowledgeable about the accused products. Apple Mtn. at 10. But that claim is belied by the fact that discovery revealed there are just as equally knowledgeable marketing employees *in Texas*, and how Apple stores documents ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮) *electronically*. *E.g.*, Ex. 9 at 8:25-9:6

Notably, Apple has not claimed that any relevant physical evidence is stored *exclusively* in NDCA or would otherwise be inaccessible anywhere in the U.S., including in its own campus in Austin. Even if the Court considered the custodians of possible sources of *electronically stored* information, many such custodians reside in WDTX. *See, e.g.*, Ex. 4 at 12:20-23 (▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮); Ex. 6 at 8:21–9:7 (same for ▮▮▮▮▮▮). "When most of the evidence is electronic and equally accessible in either forum, this factor weighs against transfer." *Rafqa Star*, 2023 WL 6050593, at *8.

---

⁹ *E.g.*, ▮▮▮▮ Decl. ¶ 6 (referencing ▮▮▮▮▮▮▮▮▮▮▮▮▮; ▮▮▮▮▮ Decl. ¶ 6 (references to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮); ▮▮▮▮ Decl. ¶ 5 (references to "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

10

      3.  <u>The Availability of Compulsory Process Disfavors Transfer</u>

  Apple claims the following as relevant non-party witnesses: (1) Greg Sueoka of Patent Law Works, who represented Proxense in communications with Apple in 2016; (2) various inventors of possible prior art references, including Robin Dua and Mark Buer. Apple Mtn. at 12. Apple's claims are easily refuted. First, Apple has not shown that Mr. Sueoka is an *unwilling* witness. "[T]he availability of the compulsory process 'receives less weight when it has not been alleged or shown that any witness would be unwilling to testify.'" *In re Planned Parenthood* 52 F.4th at 630–31 (citation omitted). Mr. Sueoka's declaration states that, if he is called as a trial witness, he would be willing to travel to Texas. Either way, his residence in Utah necessitates a two-hour flight regardless of forum. Ex. 18. His potential involvement in this case does not favor transfer.

  Second, other than Apple's conclusory assertions, there is no basis to conclude that any alleged prior art inventor would be trial witnesses. Dua and Buer were alleged prior art inventors that were part of Samsung's invalidity arguments in *Proxense v. Samsung*; but they were not trial witnesses, nor even deposed. "[B]ecause prior art witnesses are very unlikely to testify" and "Apple may have cherry picked them to begin with," the Court should give very minimal weight as to their location. *Fintiv, Inc. v. Apple Inc.*, 2019 WL 4743678, at *5 (W.D. Tex. Sept. 13, 2019).

  Third, and more important than any potential non-party witness Apple has identified, is the retired ███████████, who lives in Leander, Texas. While Proxense has characterized him as a "willing" witness for Apple, to the extent he must be subpoenaed to attend trial, he lives within 100 miles of this Court, making it far more suitable than NDCA.

  Finally, Apple also ignores that an aspect of this case will be its relationships with third-party banks, TSPs, and companies like PayPal as it relates to Apple Pay's development and marketing. *E.g.*, Compl. at ¶ 80. For example, ███████ team (based in Austin) works with

11

companies like ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉.″ Ex. 10 at 19:14-16. Apple Pay provides support for card companies with presences in Austin l▉▉▉▉▉▉▉▉ and ▉▉▉▉▉▉▉ team (also based in Austin) leads the communications for those relationships. Ex. 9 at 7:15-25. ▉▉▉▉▉▉ also testified that she ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉. *Id.* at 24:11-15; 23:4-10. And while ▉▉▉▉▉▉ also primarily meets with Apple's partners over videoconference, the *only* in-person meeting he referenced in his deposition occurred in Austin with ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉. Ex. 10 at 28:8-21. The natural inference from the facts developed by two managerial-level employees who lead "external partner" teams as having occurred in Austin with an Austin-based company signifies that there exist sources of proof and possible subpoena targets in this District. This factor therefore disfavors transfer.

    4.    <u>Trial will be Easier, More Expeditious, and Less Expensive in this Forum Given the Court's Prior Rulings on the Asserted Patents</u>

Apple concedes that this Court previously held (and the Federal Circuit agreed) that judicial economy disfavors transfer. Apple Mtn. at 12-13. However, its motion overlooks just how significant a burden on judicial economy it would be if this case were transferred.

**First**, transferring this case greatly increases the risk of inconsistent claim constructions. Not only did the Court's claim constructions in all three *Proxense* matters focus on key aspects of Proxense's patented biometric authentication technology—which equally pervades Apple's accused products—but Apple is now asking the Court to re-construe at least some of those exact terms (*e.g.*, "access message"). *See* Ex. X [Apple's proposed claim constructions]. Indeed, Apple originally proposed *eight terms* which *this Court* had already construed. *id*. If this case is transferred, re-litigation of all eight terms is likely, and "[t]wo claim constructions on the same

12

patent risk inconsistency, create greater uncertainty regarding the patent's scope, and impede the administration of justice." *U.S. Ethernet Innovations, LLC v. Acer, Inc.*, 2010 WL 2771842, at *8 n.8 (E.D. Tex. July 13, 2010) (cleaned up); *Acqis, LLC v. Sony Interactive Entm't Inc.*, No. 6-22-cv-00386-ADA, Dkt. 63 at 15 (W.D. Tex. July 19, 2023) ("Two courts ruling on the same patent asserted by the same plaintiff wastes judicial resources and risks inconsistent rulings on the patents-in-suit."). The negative risks of inconsistent claim constructions is magnified given the pending litigations regarding the same patents and similar technology in *Google* and *Microsoft*. Another Court construing claim terms differently in this case on the eve of trial in either of those matters severely impacts *all three cases*.

**Second**, this Court has expended tremendous resources learning Proxense's technology, which will need to be repeated if the case is transferred. "[A] district court's experience with a patent in a prior litigation and the co-pendency of cases involving the same patent are permissible considerations in ruling on a motion to transfer venue." *In re EMC Corp.*, 501 F. App'x 973, 976 (Fed. Cir. 2013). In *Proxense-Samsung*, this Court: (1) construed 12 claims and issued a 42-page *Markman* Order; (2) ruled on the parties' respective *Daubert* motions; (3) made 10 distinct rulings on the parties' motions for summary judgment, including with respect to validity; and (4) ruled on 36 total motions *in limine*. Notably, the accused technology in *Samsung*—the Samsung Pay app's biometric authentication technology—is analogous to the accused Apple Pay technology. And the allegations in *Google* and *Microsoft* regarding those defendant's passwordless-authentication technology have similarities to Proxense's allegations against Apple's "passkeys."[10] Because key

---

[10] *Compare* Compl. at ¶ 35 ("Attempting to eliminate the use of passwords, Apple has developed a universal platform 'passwordless' architecture (e.g. Apple ID and 'Sign in with Apple')") *with* Google Compl. at ¶ 50 ("Google directly infringes the Patents-in-Suit by creating and utilizing a universal platform password-less architecture[.]"); Microsoft Compl. at ¶ 51 (noting how the accused technology enables the "password-less biometric authentication across platforms").

13

aspects of *all* the accused products across all *Proxense* cases overlap, "judicial economy is achieved in [this] case[] through the significant judicial experience acquired by previously construing two of the patents-in-suit and also presiding over many other related disputes." *Realtime Data, LLC v. Morgan Stanley*, 2010 WL 4274576, at *4 (E.D. Tex. Oct. 28, 2010).

**Finally**, *because* Proxense has pending cases against Google and Microsoft alleging infringement of the same accused patent families, this factor *triply disfavors* transfer. This is especially true when Apple has asserted the same prior art as Google and Microsoft, which were also the same prior art litigated in *Samsung* (*e.g.*, the Dua and Buer referenced in Apple's Motion). "Judicial economy favors keeping related cases together in the same court," because "[w]hen related cases are within the same court, one court is able to resolve similar issues in the co-pending cases together." *Ecofactor, Inc. v. Resideo Techs., Inc.*, 2022 WL 13973997, at *8 (W.D. Tex. Oct. 21, 2022). This factor weighs strongly against transfer.

> **B.** **The Public Interest Factors**
>> 1. <u>The Western District of Texas has a Strong Local Interest in this Dispute</u>

The following facts establish WDTX as having a strong local interest in this dispute. *First*, Apple's research, design, and development of the Secure Enclave during the period of first infringement (~2016) were in Austin, not NDCA. *See supra* at __. That *former* Apple employees still reside in this District only strengthens this factor in Proxense's favor. *Second*, the teams responsible for Apple Pay and the iPhone Tap-to-Pay teams' external partners are all based in Austin. In other words, Apple Pay and the accused functionality **cannot function on the marketplace** (as there would be no teams to coordinate with external partners) without the teams Proxense has identified. Apple even stated in previous motions to transfer to Austin that it "employs **thousands of employees** in Apple's Austin facility who work on . . . aspects of ***Apple Pay, Apple Wallet***, and Apple Cash." *RFCyber*, No. 6:21-cv-00916-ADA, Dkt. 149 at 14

(emphasis added). This disfavors transfer. *ParkerVision, Inc. v. Intel Corp.*, 2021 WL 401989, at *7 ("Given that Apple is a large Austin employer and may be involved in designing infringing products in this case, Apple's significant presence in this District weighs against transfer"). *Third*, the presence of a significant number of Apple Pay *partners* with offices here gives rise to a local interest. For example, PayPal and Visa all have offices in this District, and ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. That Apple is headquartered in NDCA does not mean this factor favors transfer. Where "defendants and the witnesses are located across the state and across the country[,] . . . this is not the sort of localized case where the citizens of [transferee venue] have a greater 'stake' in the litigation than citizens" of the transferor forum. *In re Planned Parenthood,* 52 F.4th at 632. This factor is neutral.

        2.      <u>The Administrative Difficulties from Court Congestion Disfavor Transfer</u>

Apple acknowledges this factor's inquiry is on the relative speed to trial. Apple Mtn. at 13. Yet, it neglects to mention that median time-to-trial in is 32.7 months in this District versus 48.9 months in NDCA. Ex. 12. Courts regularly hold this disparity weighs against transfer to NDCA. *See Align Techs. Corp. v. Atlassian US, Inc.*, 2023 WL 1861220, at *5 (W.D. Tex. Feb. 9, 2023).

        3.      <u>The Remaining Public Interest Factors Do Not Favor Transfer</u>

Proxense does not dispute that the last two public interest factors—familiarity with the governing law and conflicts of laws—are neutral.

**IV.   CONCLUSION**

In sum, five factors disfavor transfer (with two substantially so), with three factors being neutral. The Court should deny Apple's Motion and keep this case with the same court that has presided over related ones.

Dated: October 18, 2024             Respectfully submitted

                         By: */s/David L. Hecht*
                               David L. Hecht **(Co-Lead Counsel)**
                               dhecht@hechtpartners.com
                               Maxim Price (*pro hac vice*)
                               mprice@hechtpartners.com
                               Yi Wen Wu (*pro hac vice*)
                               wwu@hechtpartners.com
                               HECHT PARTNERS LLP
                               125 Park Avenue, 25th Floor
                               New York, New York 10017
                               Telephone: (212) 851-6821

                               Brian D. Melton (**Co-Lead Counsel**)
                               bmelton@susmangodfrey.com
                               SUSMAN GODFREY L.L.P.
                               1000 Louisiana Street, Suite 5100
                               Houston, Texas 77002-5096
                               Telephone: (713) 653-7807
                               Facsimile: (713) 654-6666

                               Lear Jiang
                               ljiang@susmangodfrey.com
                               SUSMAN GODFREY L.L.P.
                               1900 Avenue of the Stars, Suite 1400
                               Los Angeles, California 90067-6029
                               Telephone: (310) 789-3100
                               Facsimile: (310) 789-3150

                               *Counsel for Plaintiff Proxense, LLC*

**CERTIFICATE OF SERVICE**

The undersigned certifies that on October 18, 2024, I electronically filed this document and all documents submitted concurrently herewith with the Clerk of Court via the Court's CM/ECF system which will send notification of such filing to all counsel of record, all of whom have consented to electronic service in this action. In addition for this document and for all documents submitted concurrently herewith that have been filed under seal, I have sent those documents to all counsel of record consistent with the rules of this Court.

*/s/David L. Hecht*
David L. Hecht
